# Exhibit "A"

*Knowledge, Focus, Expertise*

36 Bridge Street
Metuchen, NJ 08840
Telephone: (732) 767-3020
Facsimile: (732) 343-6880

# WANG, GAO & ASSOCIATES P.C.

*Attorneys for Amy L. Fang*

## September 21, 2012

### VIA EMAIL AND USPS FIRST CLASS MAIL

Mr. John Michael McDonnell
Trustee
McDonnell, Crowley LLC
115 Maple Avenue
Suite 201
Red Bank, NJ 07701
jmcdonnell@mcdonnelcrowley.com

> Re:    **In re Amy L. Fang**
> **Case No.: 12-26863-MBK**
> **Requested Documents**

Dear Mr. McDonnell:

Enclosed our additional documents as per your request. We have included a copy of the deeds for the 1329 Tupelo Court, North Brunswick, NJ 08902 address and the 351 State Road, Princeton, NJ 08540. Please be advised that we have contacted the creditors holding secured claims on the aforementioned properties; however, they have been either unresponsive or unwilling to provide the information requested. The amount of claims without deducting value of collateral, therefore, remains unknown.

As such, the current value of Debtor's interest in property, without deducting any secured claim or exemption remains as stated on Schedule A – Real Property to the Voluntary Petition – 351 State Road Property: $668,000.00; and 1329 Tupelo Court Property: $125,000.00.

Copies of two life insurance policies are attached as well as a copy of the Living Trust. All proceeds from the life insurance policies have been placed in a trust account. An amount of $330,000.00 was placed into money market accounts of the Trust on March 14, 2012 as evidence by the documents enclosed. The remaining $30,000.00 was placed in a checking account with PNC Bank on that same day. See enclosed for receipts of aforementioned information.

Please feel free to contact our office with any further questions or concerns.

Regards,

Christian R. Oehm

# AXA EQUITABLE

AXA Equitable Life Insurance Company

AXA Life and Annuity Company

DATE OF ISSUE:    AUG 31, 2006

### DELIVERY RECEIPT

By signing below, I(we) certify and acknowledge that:

(1)   I(we) have received Policy Number: ███████265

on the life (lives) of __ZHOU FANG__

and _____

The contract state is __NEW JERSEY__

(2)   Unless I(we) meet the terms of coverage under the Temporary Insurance Agreement, coverage under this Policy will begin on the date this receipt is signed and given to an AXA Equitable representative along with the first modal premium payment. In that event, AXA Equitable will move the Register Date of my Policy showing in the Policy Pages to the date of delivery to insure that the charges and premiums for the Policy commence on the same date as coverage under the Policy, unless I(we) request a different Register Date in writing or moving the Register Date will cause an increase in Issue Age(s).

(3)   All persons proposed for insurance under this Policy are living and insurable as described in each part of the application for this Policy.

(4)   For those Policies delivered on the 29, 30, or 31st of any month, AXA Equitable will move the Register Date to the 1st of the following month, which will change the Investment Start Date, if applicable, and the Interest Crediting Date, if applicable. Further, the current Interest rate for the Guaranteed Interest Account, if applicable, or the current interest rate for UL policies, if applicable, may also change.

Signed At __PRINCETON.    NJ__
                    City, State

Date __9-17-06__    Signed (X) _[signature]_
                                ZHOU FANG

Date _____    Signed X _____

Agent: __TANG HARRIS C__                    ASU __MLO__

Servicing Office:                    Claims Office: 800-777-6510

AXA EQUITABLE NATIONAL OPERATIONS CENTER
POST OFFICE BOX 1047
CHARLOTTE, NORTH CAROLINA 28201
(800) 777-6510

POLICYOWNER'S COPY

# AMENDMENT TO APPLICATION

Name of
Proposed Insured ___ZHOU FANG_____ Application Dated___ JUL 29, 2006
                         First            Middle Initial      Last

Policy No ____████████265_____

## TO AXA EQUITABLE LIFE INSURANCE COMPANY

The application is hereby amended by the undersigned in the following particulars:

MY ASSOCIATE HAS PROVIDED A PROPOSAL ILLUSTRATING THE VALUES OF THE CONTRACT
AS ISSUED.

ISSUE WITH GUIDELINE PREMIUM TEST.

This amendment is to be taken as a part of said application, subject to the agreement therein contained; said
application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the
policy. To the best of my knowledge and belief, in all other respects the statements and answers in the
application continue to be, without material change, true and complete as of the date of this amendment.

Dated at _____ on _____  ____

                    (City)                    (State)

_____          _____
  Signature of Purchaser if other than Applicant          Signature of Applicant

Agent;_____

Agency:_____

EV 237-400 App. Amendment.    (B)



☐ AXA Equitable Life Insurance Company
1290 Avenue of the Americas
New York, NY 10104

☐ MONY Life Insurance Company of America
1290 Avenue of the Americas
New York, NY 10104

**Application For Life Insurance
Part I**
Form No. LIFEAPP-GV
(2005)

**① PROPOSED INSURED** (Print Name as it is to appear on the policy.) Please print in ink.

Proposed Insured

A. Full Name: First: _ZHOU_ M.I. ___ Last: _FANG_    B. Gender: ☒ Male ☐ Female

C. Home Address: _351 state Road_ (No. and Street)    Bldg/Apt/Suite ___

City/Municipality: _PRINCETON_ County/Parish ___ State _NJ_ Zip + 4 Code _08540_
(If address is a P.O. Box or not actual residence, proof of residence required.)

D. Home Phone No. _609 688 0409_ Best time to Call: ___ Best phone no. to be contacted: ___

E. Date of Birth: _01-11-1966_ (Month/Day/Year) F. Place of Birth: _China_ (State/Country)

G. Marital Status: ☐ Single ☒ Married ☐ Widowed ☐ Divorced ☐ Separated   H. Soc. Sec. No. ~~████~~1891

I. Driver's Lic. No.: _F-████████0166z_ State _NJ_

J. U.S. Citizen? ☐ Yes ☒ No* If No, Country _china_ U.S. Visa type _Green card_ Passport # or U.S. Visa # ___ # of years in U.S. ___

K. Currently employed? ☒ Yes ☐ No ☐ Retired

L. Current Occupation(s) (1) Title _Small Business Owner_ (2) Duties _Remodeling_ (3) How Long? _6 yrs_
(If less than 1 year at current occupation, give previous in Remarks.)

M. Employer Name: ___

N. Employer Address: _351 state Road_ (No. & Street) _Princeton_ (City) _NJ_ (State) _08540_ (Zip + 4 Code)

O. Annual Earned Income (Income from occupation) $ _46,000_    P. Net Worth $ _275,000_

* If the Proposed Insured and/or policy owner is not a U.S. Person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

**② COVERAGE INFORMATION**

A. Plan of Insurance _Athena Universal Life II_    Amount of Insurance $ _180,000_
(If survivorship policy, complete an application for each Proposed Insured.    (If face amount is $2 million or larger complete Financial Supplement.)
If VUL, must also complete VUL Supplement.
To select dividend options on EWL or Riders on all Non-VUL Plans complete Optional Benefits Supplement.)

B. Complete for UL or VUL only (1) Death Benefit Option ☒ Option A ☐ Option B
(2) Planned Periodic Premium $ _360/Q_

C. Definition of Life Insurance Test: Complete for AUL II, IL, IL COLI '04    ☐ Guideline Premium Test    ☐ Cash Value Accumulation Test

D. Premium Mode: ☐ Annual ☐ Semi-Annual ☒ Quarterly ☐ Monthly
Or
System-Matic (Complete S-M form and check applicable box) ☐ Quarterly (only available for UL and VUL) ☐ Monthly

E. Salary Allotment (1) Unit Name ___ (2) Unit/Sub Unit. No. ___ (3) Unit Register Date ___
(Specify Allotter name, if other than insured, in Remarks.)

F. Date Policy to save Insured Age? ☒ Yes ☐ No

G. 1. Do you, the owner, intend to use or transfer the policy for any type of pre-death financial settlement, such as viatical settlement, senior settlement, life settlement, or for any other secondary market? ☐ Yes ☒ No
2. Have you, the owner, or any Proposed Insured if other than the owner, in the past 5 years sold a policy to a life settlement, viatical, or other secondary market provider? ☐ Yes ☒ No

H. Any other life insurance now in effect or application now pending? ☐ Yes ☒ No
(Give companies, amounts and policy numbers in Remarks.)

I. Will the coverage applied for replace or change any life insurance or annuities? ☐ Yes ☒ No   Is this a 1035 Exchange? ☐ Yes ☒ No
If "Yes", complete: (If additional room is needed, please use Remarks Section.)
Amount $ ___ Company ___ Issue Year ___ Policy Number ___ ☐ Life ☐ Group ☐ Annuity
Amount $ ___ Company ___ Issue Year ___ Policy Number ___ ☐ Life ☐ Group ☐ Annuity

J. Is this a Term Policy/Rider Conversion or Purchase Option? ☐ Yes ☒ No   If "Yes", complete Term Policy/Rider or Purchase Option Supplement.

K. Complete if Proposed Insured is under age 15:
a) State total amount of insurance in force on the life of applicant or child's parent, if greater $ ___
b) Are any other children in the family insured for a lesser amount? ☐ Yes ☐ No

If "Yes" give details ___

AMIGV-2005    CAT# 133941    E6173_core (4/06)  1

**❸ BENEFICIARY/OWNER**

A. Beneficiary (Total designation must be 100%. Use Remarks section for additional Beneficiary information.)

| | Relationship to Insured | Percentage |
|---|---|---|
| Beneficiary Full Name | | |
| Primary _JIAN HUA LIANG_ | _Wife_ | _100 %_ |
| Contingent _EN GUANG FANG_ | _Son_ | _60%_ |
| _PHoeBe FANG_ | _Daughter_ | _40%_ |

(If more than one Beneficiary is named, the proceeds will be paid equally to those living unless otherwise specified. Enter name of successor owner in Remarks.)

B. Owner (The Owner of this policy is the Insured unless otherwise specified below. Enter name of successor owner in Remarks.)

Provide the Applicant's name, address and Taxpayer ID, if different from the Insured and Owner, in Remarks Section.

If the Owner is the Trust provide the name of the Trust.

Owner's Name: _____ Social Security # or TIN _____

Address: Street _____ City _____ State _____ Zip Code _____
(Billing notices will be sent to the Owner at this address unless otherwise directed in Remarks Section.)

U.S. Citizen? ☐ Yes ☐ No* If No, Country _____ U.S. Visa type _____ Passport # or U.S. Visa # _____ # of years in U.S. _____

Relationship to Insured _____ Date of Birth _____

Name of Trustee _____ Date of Trust Agreement _____

* If the policy owner is not a U.S. Person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

**❹ GENERAL INFORMATION (Proposed Insured)**

List details of all answers in the Remarks section.

| | | |
|---|---|---|
| A. | Ever had a driver's license suspended or revoked, or within the last 5 years, been convicted of reckless or negligent driving or driving under the influence of alcohol or drugs? (If "Yes", include dates, types of violations, and reason for suspension or revocation in Remarks.) | ☐ Yes ☒ No |
| B. | Any plans to travel or reside outside the United States? (If "Yes", complete Foreign Residence and Travel Supplement.) | ☐ Yes ☒ No |
| C. | Have you been disabled for 2 or more weeks within the last 2 years? | ☐ Yes ☒ No |
| D. | In the last year flown other than as a passenger or plan to do so? (If "Yes", complete Aviation Supplement.) | ☐ Yes ☒ No |
| E. | Engaged within the last year or any plan to engage in motor racing on land or water, underwater diving, skydiving, ballooning, hang gliding, parachuting or flying ultra-light aircraft or other hazardous sports or hobbies? (If "Yes", complete Avocation Supplement.) | ☐ Yes ☒ No |
| F. | Ever had an application for life or health insurance that was declined, required an extra premium or other modification? (If "Yes", state companies and provide full details in Remarks.) | ☐ Yes ☒ No |
| G. | In the last 10 years, have you been convicted of, or pled "no contest" to a felony? (If "Yes" in "Remarks", state full details of offense and penalty, with dates.) | ☐ Yes ☒ No |
| H. | Do you currently use any form of tobacco or nicotine product? | ☐ Yes ☒ No Type_____ Avg. Quantity # packs_____ Frequency_____ |
| I. | Have you ever used any form of tobacco or nicotine product? | ☐ Yes ☒ No Type_____ Date Ceased _____ |

**❺ MEDICAL INFORMATION (Proposed Insured)** Please Note: Complete this section even if a paramedical or medical exam is being ordered.

A. Height _5_ Ft. _8_ in., Weight _180_ lbs.

B. Personal Physician Name _YIAO MEI Chen MD._ _609-918-9100_

C. Address _379 PRINceton Hightstown Rd._ _cranbury, NJ 08512_

D. Date and Reason for Last Visit in the Last 5 Years _2005 for regular checkup_

E. What treatment was given or recommended? (If none, so state) _none_

Has Proposed Insured:

| | | |
|---|---|---|
| F. | Ever had or been treated for heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor, cancer, respiratory or neurological disorder? | ☐ Yes ☒ No |
| G. | In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Also include medical checkups in the last 2 years. Do not include colds, minor injuries or normal pregnancy.) | ☐ Yes ☒ No |
| H. | In the last 10 years: | |
| | 1. Used, except as legally prescribed by a physician, tranquilizers, barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other mood altering drugs; heroin, methadone or other narcotics; amphetamines or other stimulants; or any other illegal or controlled substances? (If "Yes", complete Substance Usage Supplement.) | ☐ Yes ☒ No |
| | 2. Received counseling or treatment regarding the use of alcohol or drugs including attendance at meetings or membership in any self-help group or program such as Alcoholics Anonymous or Narcotics Anonymous? (If "Yes", complete Substance Usage Supplement.) | ☐ Yes ☒ No |
| I. | In the last 10 years, been: Diagnosed with, or treated for, Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession? | ☐ Yes ☒ No |

J.

| Family History | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | _78_ | | |
| Mother | _71_ | | |
| Sibling | _45, 36_ | | |

5017932,07-20-2006,11:42:17

(4/06)  2

AMIGV-2005

DETAILS OF ALL "YES" ANSWERS FOR MEDICAL INFORMATION (attach additional sheet of paper if necessary;
**❻** and it must be signed and dated by the Proposed Insured, Owner, and financial professional.)

| Question No. | Illness, Treatment, and Number of Attacks (include specific diagnosis and medication) | Onset Date | Recovery Date | If disabled, How long? | Doctor, Clinic, or Hospital Complete Address, and Phone Number |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

REMARKS
Provide details for any of the questions, and any other additional remarks.
If the owner is a Qualified Plan, please indicate the qualified plan and type here.

(Attach additional sheet of paper if necessary; and it must be signed and dated by the Proposed Insured, Owner, and financial professional.)

*This n a preferrd client program.*

**❼ COMPLETE IF MONEY IS PAID WITH THE POLICY:**

Amount paid with this Application: $ _____

Has the undersigned read, signed and received a copy of the Temporary Insurance Agreement, and do they agree to the conditions of the Temporary Insurance Agreement, including:

(i) the requirement that all of the conditions in that Agreement must be met before any temporary insurance takes effect, and

(ii) the $1,000,000 insurance amount limitations, and ☐ Yes  ☐ No

(iii) that the Person Proposed for Insurance is at least 15 days of age and not older than 75 years of age?

If "No," or if any Person Proposed for Insurance has been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession within the last 10 years or had cancer, a stroke, or a heart attack within the last year, a premium may not be paid before the policy is delivered.

AGREEMENT. Each signer of this application agrees that:

(1) The statements and answers in all parts of this application are true and complete. We (the Company checked on page 1 of this application) may rely on them in acting on this application.

(2) The Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect if money is paid before the policy is delivered. Temporary Insurance is not provided for a policy or benefit applied for under the terms of a guaranteed insurability option or a conversion privilege.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full initial premium for it is paid while the person(s) proposed for insurance is (are) living; (b) before any Registered Date specified in this application; and (c) unless to the best of my (our) knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time the full initial premium is paid.

(4) No financial professional or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement. Or to waive any of our rights or requirements. We shall not be bound by any information unless it is stated in Application Part 1 or Part 2 (Paramedical or Medical exam).

(5) I acknowledge receipt of the Living Benefits Brochure (Accelerated Death Benefit Rider Brochure), where applicable.

(4/06)  3

AMIGV-2005                    5017932.07-20-2006,11:42:17

☐ AXA Equitable Life Insurance Company    ☐ MONY Life Insurance Company of America

## ACKNOWLEDGEMENT OF UNDERWRITING PRACTICES

I (we) acknowledge that I (we) have received a statement of the Underwriting Practices of the Company (ies) which describes from whom and why the Company (ies) obtains information on my (our) insurability, to whom such information may be reported and how I (we) may obtain it. The statement contains the notice required by the Fair Credit Reporting Act.

## AUTHORIZATIONS

### TO OBTAIN HEALTH INFORMATION

I (we) authorize any physician, hospital, clinic, medical practitioner, medical testing laboratory, pharmacy or other health care provider, health plan or insurance company (including our Company, with respect to other coverages), or any prescription drug or pharmacy benefit manager or administrator, and the Medical Information Bureau to disclose to the Company (ies) and its authorized representatives any and all information, whether fact or opinion, they may have about any diagnosis, treatment, prognosis, genetic test records, findings and/or results regarding my (our) past, present or future physical or mental condition.

### TO OBTAIN NON-HEALTH INFORMATION

I (we) authorize any employer, business associate, government unit, financial institution, consumer reporting agency, the Medical Information Bureau, my (our) insurance agency and my (our) financial professional to disclose to the Company (ies) and its authorized representatives any information they may have about my (our) occupation, avocations, finances, driving record, character and general reputation. I (we) authorize the Company (ies) to obtain investigative consumer reports, as appropriate.

### PURPOSE OF AUTHORIZATIONS

I (we) understand that the information obtained will be used by the Company (ies) to determine my (our) eligibility for life insurance coverage and such other uses specified in accordance with the Underwriting Practices attached to this application. In addition, information may be disclosed to the Medical Information Bureau (MIB) who, upon request, may disclose such information about you in its file to another member company with whom you apply for life or health insurance or to whom a claim for benefits may be submitted: when requested by a government agency; in connection with a legal or arbitration proceeding; or for other purposes as required or permitted by applicable law. If a policy is issued to me (us), this information may also be used in the future to administer my (our) policy and process claims made under the policy.

### COVERAGE CONDITIONS

I (we) understand that the Company (ies) is conditioning the issuance of coverage on the provision of this authorization, and that, while I (we) may refuse to sign this authorization, my (our) refusal to do so could result in coverage not being issued.

### ADDITIONAL AUTHORIZATIONS

You have advised me (us) that the Company (ies) may request additional authorizations in order to obtain the information the Company (ies) needs to complete its review of my (our) application and, if the policy is issued, in connection with any claim asserted under the policy. I (we) understand that I (we) am (are) not obligated to provide these additional authorizations but that, if I (we) choose not to provide them, this application and any claim made under the policy, if issued, may be rejected.

### DURATION

Unless otherwise revoked, I (we) agree that this authorization will expire on the earlier of the date that the Company (ies) declines my application for coverage or, if a policy is issued, 24 months from the date of my (our) application. I (we) understand that I (we) may revoke my (our) authorizations at any time, except to the extent that the Company (ies) has taken action in reliance on this authorization, this application and any claim made under the policy, if issued, may be rejected. My (our) revocation must be submitted in writing to: Chief Underwriter of the Company checked above and on the front page of this application, 1290 Avenue of the Americas, New York, New York 10104.

### COPY OF AUTHORIZATIONS

I (we) have a right to ask for and receive true copies of this Acknowledgement and Authorization Form and all other authorizations signed by me (us). I (we) agree that reproduced copies will be as valid as the original.

FOR THE APPLICANT'S PROTECTION, THE LAWS OF CERTAIN STATES REQUIRE THIS NOTICE: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE/SHE IS FACILITATING A FRAUD AGAINST AN INSURER, FILES AN APPLICATION OR CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT AS TO ANY MATERIAL FACT MAY BE GUILTY OF INSURANCE FRAUD, WHICH MAY RESULT IN LOSS OF COVERAGE UNDER THIS POLICY AND MAY SUBJECT THE APPLICANT/CLAIMANT TO CRIMINAL PROSECUTION.

SOCIAL SECURITY OR TAX I.D. NUMBER CERTIFICATION—UNDER THE PENALTIES OF PERJURY, I CERTIFY THAT (I) THE NUMBER SHOWING ON THIS FORM IS MY CORRECT TAXPAYER IDENTIFICATION NUMBER, AND (II) I AM NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE (A) I AM EXEMPT FROM BACKUP WITHHOLDING OR (B) I HAVE NOT BEEN NOTIFIED BY THE INTERNAL REVENUE SERVICE (IRS) THAT I AM SUBJECT TO BACKUP WITHHOLDING AS A RESULT OF A FAILURE TO REPORT ALL INTEREST OR DIVIDENDS OR (C) THE IRS HAS NOTIFIED ME THAT I AM NO LONGER SUBJECT TO BACKUP WITHHOLDING, AND (III) I AM A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN).

CERTIFICATION INSTRUCTIONS: You must cross out item (II) above if you have been notified by the Internal Revenue Service that you are currently subject to backup withholding because you have failed to report all interest or dividends on your tax return. THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISIONS OF THIS DOCUMENT OTHER THAN THE CERTIFICATION REQUIRED TO AVOID BACKUP WITHHOLDING.

I (we), the undersigned, by my (our) signature(s) below understand that I (we) am (are) agreeing to all the terms and conditions of this application, including, but not limited to, the Acknowledgement and Authorization.

Dated at City _**PRINCETON**_

X _____
Signature of Proposed Insured, Applicant, or parent or guardian,
if Proposed Insured is a Child, Issue Ages 0-14

State _____ _**N J**_

_____
Signature of Owner or Applicant if not Proposed Insured
(If corporation, print firm's name and signature of authorized officer.)
(If trust, signature of trustee.)

on _**7  29  2006**_

---

### Financial Professional to complete this section:

Will any existing insurance be replaced or changed (or has it been) assuming the insurance applied for will be issued?    ☐ Yes   ☒ No

(If "yes" give details _____

I certify that I have asked and recorded completely and accurately the answers to all questions on the fully completed application Part 1, and know of nothing affecting the risk that has not been recorded herein.

☑ I have witnessed the signature required on fully completed Part 1    ☐ I have not witnessed the signature required on fully completed Part 1. (Explain below)

_Harris Tang_ (signature)

Signature of Licensed Financial Professional/Insurance Broker
Print Licensed Financial Professional's Name _____ **HARRIS  TANG** _____

(4/06)    4

AMIGV-2005

5017932,07-20-2006,11:42:17

Application Part 2 To: ☒ **The Equitable Life Assurance Society of the United States**

☐ **The Equitable of Colorado, Inc.**

**PARAMEDICAL**    Reason for submission of this form: ☐ New Policy  ☒ Policy Change  ☐ Reinstatement

| 1. a. Proposed Insured (Please Print) | First Name ZHOU | Middle Initial | Last Name FANG |
|---|---|---|---|

b. Height: 5 ft. 6 in.  c. Weight: 170 lbs.
d. Birth Date: 01-11-66
e. ☒ Male  ☐ Female

2. a. Name and address of personal physician (or medical facility used instead): (If none, so state) DR. XIANG LI-9B JAMES ST SUITE 201, EDISON, NJ 08820

b. Date and reason last consulted if within the last 5 years: 2005 - PHYSICAL CHECK-UP, RESULT-NORMAL

c. What treatment was given or recommended? (If none, so state) NONE

(For all "Yes" answers to Questions 3-9, circle items that apply.)

| | Yes | No |
|---|---|---|
| 3. Has Proposed Insured ever had or been treated for: | | |
| a. Disease or disorder of eyes, ears, nose or throat? | ☐ | ☒ |
| b. Dizziness, fainting, convulsions; paralysis or stroke; psychiatric, psychological or emotional disturbance; mental or nervous disease or disorder? | ☐ | ☒ |
| c. Shortness of breath; blood spitting; bronchitis, asthma, emphysema, tuberculosis, or other chronic respiratory disease or disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels? | ☐ | ☒ |
| e. Ulcer, hernia, colitis, intestinal bleeding; jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine; stone or other disease or disorder of kidney or bladder? | ☐ | ☒ |
| g. Diabetes; cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder? | ☐ | ☒ |
| h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints? | ☐ | ☒ |
| i. Deformity, lameness or amputation? | ☐ | ☒ |
| j. Allergies; anemia; other blood or lymph disease or disorder? | ☐ | ☒ |
| k. Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy? | ☐ | ☒ |
| 4. Is Proposed Insured now under observation or taking treatment? | ☐ | ☒ |
| 5. Has Proposed Insured, within the last 10 years, been: | | |
| a. Diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)? | ☐ | ☒ |
| b. Treated by a member of the medical profession for AIDS or ARC? | ☐ | ☒ |
| 6. Has Proposed Insured, within the last 10 years: | | |
| a. Used, except as legally prescribed by a physician, tranquilizers; barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other mood-altering drugs; heroin, methadone or other narcotics; amphetamines or other stimulants; or any other illegal or controlled substances? | ☐ | ☒ |
| b. Received counseling or treatment regarding the use of alcohol or drugs? | ☐ | ☒ |
| 7. Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months? | ☐ | ☒ |

| 8. Other than as stated in answers to Questions 2-6, has Proposed Insured, within the last 5 years: | Yes | No |
|---|---|---|
| a. Consulted or been examined or treated by any physician or practitioner? | ☐ | ☒ |
| b. Had any illness, injury, or surgery? | ☐ | ☒ |
| c. Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☒ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☒ |
| e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed? | ☐ | ☒ |
| 9. a. Has Proposed Insured, within the last 12 months: | | |
| (i) Smoked Cigarettes? | ☐ | ☒ |
| (ii) Used any other form of tobacco? (Give full details) | ☐ | ☒ |
| b. Has Proposed Insured, within the last 5 years: | | |
| (i) Smoked Cigarettes? | ☐ | ☒ |
| (ii) Used any other form of tobacco? (Give full details) | ☐ | ☒ |

| 10. Family History | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 75 | | |
| Mother | 70 | (2) | |
| Brothers/Sisters | 43+36 | | |

DETAILS FOR "YES" ANSWERS. Include: i. Question Number. ii. Diagnosis and Treatment. iii. Results. iv. Dates and Duration. v. Names and Addresses of all attending physicians and medical facilities. (If additional space is needed, please attach a separate sheet dated, signed and witnessed as below.)

||||||||||||
711086636

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on the application for insurance or making the policy change or reinstatement.

Dated at NB BRUNSWICK, NJ on 08-04-06  X _____ (Signature of Proposed Insured)
   City    State    Mo  Day  Yr.

Witness (Must be Examiner): _____

180-225D        E2097_4        CAT. #125230        (Ed. 10/00)  1

# THE EQUITABLE

The Equitable Life Assurance Society of the United States

The Equitable of Colorado, Inc.

DATE OF ISSUE:   06 /24 /04

## DELIVERY RECEIPT

This is to acknowledge receipt of policy number _____ 889 _____

on the life of _____ ZHOU FANG _____

The contract state is _____ NEW JERSEY _____

Signed At _NORTH BRUNSWICK_____ , ___NJ___
                                        City, State

Date _7-5-04_____  Signed X _T ZHOU FANG_____
                              ZHOU FANG

Associate _____ TANG _____              ASU ___MLO_____

Claims Office: 800-777-6510

Servicing Office:

NATIONAL OPERATIONS CENTER
POST OFFICE BOX 1047
CHARLOTTE, NORTH CAROLINA 28201-1047
(800) 777-6510

POLICYOWNER'S COPY

DR-1 (2)

# AMENDMENT TO APPLICATION

Name of Proposed
Insured or Annuitant __ZHOU FANG__          Application Dated __MAY 24, 2004__
                        First      Middle Initial      Last

Policy or Contract No. ____ J ▮▮▮▮ 889      MLO __

## TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

The application is hereby amended by the undersigned in the following particulars:

ISSUE WITH DATE OF BIRTH TO BE JAN 11, 1966.

ISSUE WITH NAME OF INSURED TO BE ZHOU FANG.

This amendment is to be taken as a part of said application, subject to the agreement therein contained; said application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the policy or contract. To the best of my knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment.

Dated at _____ on _____ ____ ____
              (City)              (State)

_____          _____
Signature of Purchaser if other than Applicant          Signature of Applicant
                                          SGN - ZHOU FANG

Agent:  H TANG

Agency: WOODBRIDGE

180-237E App. Amendment.

Part 1: General Application for Life Insurance
THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES (EQUITABLE)
Home Office: 1290 Avenue of the Americas, New York, NY 10104

*Please print in ink.*

1. **PROPOSED INSURED(S)** (Print Name(s) as it is to appear on the policy.)

**A. First Proposed Insured (1st Insured)**

1. Title: ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Miss ☐ Other Title _____
2. Name: _ZHOU_ (First) _____ (Middle) _FANG_ (Last)     3. Sex ☒ M ☐ F
4. Date of Birth: _01  11  1966_ (Month/Day/Year)    5. Place of Birth: _CHINA_ (State/Country)
6. Driver's Lic. No. F~~_____~~1662    State or Country: _NJ_    Exp. Date: _5  31  07_ (Month/Day/Year)
7. Soc. Sec. or Tax ID No. ~~_____~~1891
8. Previous/Other Name (if applicable) _____
9. U.S. Citizen? ☐ Yes ☒ No* # No. Country _CHINA_    U.S. Visa type and # (if any) _have Green card_
   Passport # (if any) _____
10. Is the Proposed Insured either: (1) A senior military, governmental, or political official in a non-U.S. country, or (2) Closely associated with or an immediate family member of such official? ☐ Yes ☒ No If Yes, identify the name of the official, office held and country.

11. Primary Residence Address: _1329 Tupelo ct_ (No. & Street)
    _North Brunswick_ (City/Municipality, State (or Country), Zip Code) _NJ  08902_    _3 yrs_ (Years there)
    (If any address is a P.O. Box, Care of or if Residence Address is different from mailing address, proof of residence is required.)
    Previous Address: (If less than 2 years at current) _____ (No. & Street)   (City)   (State or Country)   (Zip + 4 Code)
12. Tel.: (1) Day _732 297 1630_ (2) Evening _(732 297 1630_ (3) Best time to call: _____
13. Currently employed? ☒ Yes ☐ No ☐ Retired
14. Current Occupation(s): (1) Title: _Small Business owner_ (2) Duties: _Remodeling_ (3) How long? _5 yrs_
    (If less than 1 year at current occupation, give previous in Special Instructions Section 19.)
15. Employer Name: _Self employed_
16. Employer Address: _1329 tupelo ct_ (No. & Street)   _North Brunswick_ (City)   _NJ_ (State)   _08902_ (Zip + 4 Code)

**B. ☐ Second Proposed Insured (2nd Insured) or ☐ Applicant** (Complete if joint survivorship policy is applied for or if Applicant is not Proposed Insured(s).)

1. Title: ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Miss ☐ Other Title _____
2. Name: _____ (First) _____ (Middle) _____ (Last)     3. Sex ☐ M ☐ F
4. Date of Birth: _____ (Month/Day/Year)    5. Place of Birth: _____ (State/Country)
6. Driver's Lic. No. _____    State or Country: _____    Exp. Date: _____ (Month/Day/Year)
7. Soc. Sec. or Tax ID No. _____
8. Previous/Other Name (if applicable) _____
9. U.S. Citizen? ☐ Yes ☐ No* # No. Country _____    U.S. Visa type and # (if any) _____
   Passport # (if any) _____
10. Is the Proposed Insured either: (1) A senior military, governmental, or political official in a non-U.S. country, or (2) Closely associated with or an immediate family member of such official? ☐ Yes ☐ No If Yes, identify the name of the official, office held and country.

11. Primary Residence Address: _____ (No. & Street)
    _____ (City/Municipality, State (or Country), Zip Code)    (Years there)
    (If any address is a P.O. Box, Care of or if Residence Address is different from mailing address, proof of residence is required.)
    Previous Address: (If less than 2 years at current) _____ (No. & Street)   (City)   (State or Country)   (Zip + 4 Code)
12. Tel.: (1) Day (  ) _____ (2) Evening (  ) _____ (3) Best time to call: _____
13. Currently employed? ☐ Yes ☐ No ☐ Retired
14. Current Occupation(s): (1) Title: _____ (2) Duties: _____ (3) How long? _____
    (If less than 1 year at current occupation, give previous in Special Instructions Section 19.)
15. Employer Name: _____
16. Employer Address: _____ (No. & Street)   (City)   (State)   (Zip + 4 Code)

* If the Proposed Insured and/or Policyowner is not a U.S. person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

AXAGA-2003

CAT. #132113
5017932, 05-17-2004, 13:51:40

X00628_core   1

## 2. POLICYOWNER(S)

The Owner is: (1) ☒ Proposed Insured(s)
(2) ☐ Other: (1) ☐ Individual (2) ☐ Corporation (3) ☐ Partnership (4) ☐ Trust Dated ___ Mo ___ Day ___ Yr ___   (5) ☐ Qualified Plan

(6) If an individual, indicate: ☐ Mr., ☐ Mrs., ☐ Ms., ☐ Miss ☐ Other Title

(7) Name of person:
First ___ Middle ___ Last ___

(8) Relationship to Insured: ___
Name of firm or plan

(3) Owner's Mailing/Billing Address:
No. & Street

City/Municipality, State (or Country), Zip Code

(a) Primary Residence Address:
(if different from Mailing Address)
No. & Street   Years there

City/Municipality, State (or Country), Zip Code
(if any address is a P.O. Box, or Care of or if Residence Address is different from mailing address, proof of residence is required.)

(4) Tel.: (1) Day (   )   (2) Evening (   )   (3) Best time to call:

(5) Currently employed? ☐ Yes ☐ No ☐ Retired

(6) Current Occupation(s): (1) Title:   (2) Duties:   (3) How long?
(if less than 1 year at current occupation, give previous in Special Instructions Section 19.)

(7) Employer Name:

(8) Employer Address:   No. & Street   City   State or Country   Zip + 4

(9) Answer if Policyowner is not Proposed Insured: (2) Soc. Sec. or Tax ID No.   (6) Date of Birth: (Mo/Day/Year)   Code

(3) Place of Birth:   (4) Driver's Lic. No.   State or Country:   (State/Country)

U.S. Visa type and # (if any)   Passport # (if any)   (Month/Day/Year)

(10) U.S. Citizen? ☐ Yes ☐ No # or Country

(11) Is the Owner either: (1) A senior military, governmental, or political official in a non-U.S. country, or (2) Closely associated with or an immediate family member of such official? ☐ Yes ☐ No ☐ If Yes, identify the name of the official, office held and country.

(12) Successor Owner (if covered) Give full name:
First ___ Middle ___ Last ___
and Relationship to Insured:
Soc. Sec. or Tax ID No.

If the Owner or Successor Owner is other than the Proposed Insured, and if all persons so designated die before the Proposed Insured, the Owner will be the estate of the last such person to die, except where the Proposed Insured is a child. In cases where the Proposed Insured is a child and the Owner or Successor Owner dies before the Insured child, the child will be the Owner unless otherwise designated. In such designation, include Owner's full name and relationship to the child, and the Owner's social security or tax number.

If the Proposed Insured and/or Policyowner is not a U.S. Citizen or U.S. person (U.S. Citizen or U.S. Corporation, Partnership, or Trust established or organized under the laws of a state of the United States) then he, she or it may have to provide additional documentation, including IRS form W-8 BEN.

## 3. BENEFICIARY for insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured and %. If more than one beneficiary, Indicate % for each. Total must equal 100%. If additional space is needed, please use Special Instructions Section 19.

a. Primary Beneficiary(ies): Name(s)

| | Name(s) | Relationship | % |
|---|---|---|---|
| (1) | JIAN HUA LIANG | wife | 100 |
| (2) | | | |
| (3) | | | |
| (4) | | | |

b. Contingent Beneficiary(ies): Name(s)

| | Name(s) | Relationship | % |
|---|---|---|---|
| (1) | EN CHANG FANG | Son | 50 |
| (2) | PHOEBE FANG | Daughter | 50 |
| (3) | | | |
| (4) | | | |

Note: Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured in equal shares. If none survive, payment will be made to the Insured's estate. The Beneficiary(ies) under any Term Insurance Rider or any Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions. In any such designation, give full name and relationship of beneficiary(ies) to the Insured

**4. PLAN DESCRIPTION AND PREMIUM PAYMENT METHOD**

Plan Name ___30 yr level term___

a. Total Face Amount $ ___180,000—___

b. Guaranteed Issue Amount $ _____
(Complete if any portion of Total Face Amount involves Guaranteed Issue Underwriting.)

c. Premium Mode: ☐ Annual ☐ Semi-Annual ☑ Quarterly ☐ Monthly*
System-Matic (Complete S-M form and check applicable box below.)
☑ Monthly ☐ Quarterly*

$136.58

d. ☐ Salary Allotment (1) Unit Name _____
(2) Register Date _____
(3) Unit/Sub Unit No. _____
(4) Blanket No. _____
(5) Allotter's No. _____

e. ☐ Military Allotment: (1) Branch _____
(2) Register Date _____
(Month/Day/Year)

**Whole Life Only**
☐ Loan Interest Rate
☐ Adjustable ☐ Fixed
☐ Automatic Premium Loan

**Universal Life/Survivorship Universal Life Only**
Initial Premium Payment        $ _____
Planned Periodic Payments    $ _____
Death Benefit Options: ☐ Option A (Level Face Amount)
☐ Option B (Face Amount plus Policy Account Value)

* Available with UL/SUL Only

**5. DIVIDEND ELECTIONS (Whole Life ONLY)**

☐ Additions (*must choose if Supplemental Insurance Rider selected*)
☐ Accumulations

☐ Plan 'AD'     Term Dividend
☐ Plan 'B'   } Provision

☐ Premiums, Balance to Additions*
☐ Cash

*For Qualified Pension Trust Plans Balance to Cash, not Additions.

**6. OPTIONAL BENEFITS**

**Whole Life**
☐ Accidental Death Benefit* (Amount) $ _____
☐ Disability Premium Waiver*
☐ Children's Term** $ _____ Units _____
☐ Option to Purchase Add'l Ins.
(Issue ages to 37 only) $ _____
☐ Paid-up Additions:
(1) Single Premium $ _____
(2) Recurring Premium $ _____
mode _____
☐ Supplemental Insurance (SIR) $ _____
Target Death Benefit $ _____
☐ Yearly Renewable Term:
(1) On Insured $ _____
(2) On Add'l Insured** $ _____
☐ Other _____

**Term Life**
☑ Disability Premium Waiver*
☐ Children's Term** $ _____ Units _____
☐ Option to Purchase Add'l Ins.
(Issue ages to 37 only) $ _____
☐ Other _____

**Survivorship Universal Life**
☐ Option to Split upon Divorce
☐ Estate Protector (Insert percentage)
_____ % (Maximum = 122%)
☐ Lapse Protection***
☐ Other _____

**Universal Life**
☐ Disability Waiver — Monthly Deductions*
☐ Children's Term** $ _____ Units _____
☐ Option to Purchase Add'l Ins.
(Issue ages to 37 only) $ _____
☐ Lapse Protection***
☐ Other _____

* Limitations: If applied for, the Accidental Death Benefit is payable only if the Child dies as a result of an accident after the Child's first birthday. If the Disability Premium Waiver or Waiver of Monthly Deductions benefits is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's fifth birthday.

** If coverage is elected, complete applicable parts of Question 7, and answer Questions 11 through 18 with respect to the Additional Insured and/or Children for Term Insurance Rider.

*** Not available if Death Benefit Option B is elected.

3

AXAGA-2003                    5017932,05-17-2004,13:51:40

**7. COMPLETE FOR PROPOSED ADDITIONAL INSURED, CHILDREN'S TERM RIDER, JUVENILE INSURANCE OR SUPPLEMENTAL PROTECTIVE BENEFIT** Also answer Questions 11 through 18 with respect to Proposed Additional Insured, Children under Children's Term Rider or Applicant if electing Supplemental Protective Benefit.

a. Title: ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Miss ☐ Other Title _____

First | Middle | Last

Date of Birth: _____ Age Nearest Birthday: _____ Sex: ☐ M ☐ F Place of Birth: _____
(Month/Day/Year)                                                                                    (State/Country)

Soc. Sec. No. or Tax ID No. _____ Previous/Other Name (if applicable) _____

Relationship of Owner to Add'l Insured: _____ State of Residence: _____

Current Occupation(s): (1) Title: _____ (2) Duties: _____ (3) How Long? _____
                                         (If less than 1 year at current occupation, give previous in Special Instructions Section 19.)

b. Children for Term Insurance Rider (Use Special Instructions, Section 19 if more space is needed.)*

First | Middle | Last

Date of Birth: _____ Sex: ☐ M ☐ F Relationship to Owner: _____
(Month/Day/Year)

First | Middle | Last

Date of Birth: _____ Sex: ☐ M ☐ F Relationship to Owner: _____
(Month/Day/Year)

First | Middle | Last

Date of Birth: _____ Sex: ☐ M ☐ F Relationship to Owner: _____
(Month/Day/Year)

* Note: To be eligible, children (including stepchildren and legally adopted children) must not have reached their 18th birthday. Coverage does not begin until a child is 15 days old

c. For Juvenile Insurance (Ages 0–14): (1) Will there be more life insurance in force on this Child than on any other child ☐ Yes ☐ No
in the family?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
If "Yes," explain _____ (2) Total Life Insurance in effect on Applicant: $ _____

(3) Name of applicant if other than Policyowner: _____

Relationship to Child: _____

**8. OPAI COMPLETE IF EXERCISING OPTION TO PURCHASE ADDITIONAL INSURANCE**

If Option is under Individual Policy:

a. (1) ☐ Regular; (2) ☐ Birth or Adoption; Child's Name _____, Date of Birth or Adoption ___/___/___ ; (3) ☐ Alternate

b. Existing original policy no. _____ c. Option Date ___/___/___ d. Option Amount $ _____

e. If applying for Disability Premium Waiver, is Proposed Insured now totally disabled as defined in the Disability Premium Waiver Provision of the ☐ Yes ☐ No
original policy indicated above in b.? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

This application is made under a provision in the existing policy indicated in 8.b. above, permitting the purchase of additional individual life insurance (the "Option Provision"). If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the additional insurance, then the additional insurance shall take effect upon the terms of this policy the insurer would issue. Otherwise, the additional insurance shall not take effect. (Answer Questions 11 through 18 only if evidence of insurability is required in connection with an optional benefit or any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision.)

**9. FINANCIAL INFORMATION**

a. Complete for any Proposed Insured, Policyowner or Applicant. If Juvenile Insurance (Ages 0–14), provide income for Applicant.

| | 1st Insured | 2nd Insured | Policyowner (if other than the Proposed Insured) |
|---|---|---|---|
| i. Gross annual compensation (Salary, Commissions, Bonuses, etc.): | $ 38,000 (Current Rate) | $ _____ (Current Rate) | $ _____ (Current Rate) |
| ii. Other Income (Dividends, Interest, Net Real Estate, etc.): | $ 0 (Past 12 months) | $ _____ (Past 12 months) | $ _____ (Past 12 months) |
| Total Income before Taxes: | $ 38000 — | $ _____ | $ _____ |
| iii. Net Personal Worth: | $ 76000 — | | |

b. Complete if Business will own the insurance.

| | Current Year | Previous Full Year |
|---|---|---|
| Total Business Assets: | $ _____ | $ _____ |
| Total Liabilities: | $ _____ | $ _____ |
| Total Business Net Worth: | $ _____ | $ _____ |

4

AXAGA-2003

**10. GUARANTEED ISSUE (Answer 10. If Guaranteed Issue only is being applied for, omit questions 11 through 18 and complete 20 (if applicable).)**

| | | Yes | No |
|---|---|---|---|
| a. | Was any Proposed Insured actively at work at least 30 hours per week at his or her customary place of employment for at least 30 days (excluding vacations) prior to the date of this application? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☐ No |
| b. | Is any Proposed Insured actively at work on the date of this application? (If "No" to a. or b. give full details in Special Instructions Section 19.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☐ No |
| c. | Will any existing insurance or annuity be replaced or changed (or has it been) assuming the insurance applied for will be issued? . . (If "Yes" give full details in Special Instructions Section 19.) | ☐ Yes | ☐ No |
| d. | Has any Proposed Insured: | | |
| | (i) Ever Smoked Cigarettes? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☐ No |
| | (ii) Ever used any other form of tobacco? | ☐ Yes | ☐ No |

If Yes to (i) or (ii), give type of tobacco used _____ date of last use ___/___/___
date cigarette last smoked ___/___/___

**OTHER INFORMATION** For any "Yes" response, provide full details in Special Instructions Section 19.

Has any Proposed Insured and/or child:

| | | Yes | No |
|---|---|---|---|
| 11. a. | Ever had a driver's license suspended or revoked, or within the last 10 years, been convicted of reckless or negligent driving or of any two or more other moving violations or driving under the influence of alcohol or drugs? . . . . . . . . . . . . . . . . . . . . (If "Yes", include dates, types of violation, and reason for suspension or revocation in Special Instructions Section 19.) | ☐ Yes | ☒ No |
| b. | Any plans to travel or reside outside the United States? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☒ No |
| c. | Any other life insurance now in effect or application now pending? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☒ Yes | ☐ No |

(Give companies, amounts and policy numbers.)

| I. Insurance in Force (All Companies) | | | II. Insurance Applied For (All Companies) | |
|---|---|---|---|---|
| Purpose | Face Amount | Company & Policy # | Face Amount | Company & Policy # |
| Personal | $ 250,000 - | Equitable, ███████ 482 | $ _____ | _____ |
| Business | $ _____ | _____ | $ _____ | _____ |
| Total in Force | $ 250,000 - | _____ | $ _____ | _____ |

Amount applied for elsewhere is ☐ competitive ☐ additional.

| | | Yes | No |
|---|---|---|---|
| d. | Been disabled for 2 or more weeks within the last 2 years? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☒ No |
| 12. a. | In the last year flown other than as a passenger or plan to do so? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☒ No |
| | If "Yes," enter total flying time at present _____ hours; last 12 mos. _____ hours; next 12 mos. _____ est. hours. (Complete Aviation Supplement for crop dusting; pilot instruction; or commercial, competitive, helicopter, military, stunt or test flying.) | | |
| b. | Engaged within the last year or any plan to engage in motor racing on land or water, underwater diving, skydiving, ballooning, hang gliding, parachuting or flying ultra-light aircraft or any other hazardous sports or hobbies? (If "Yes," complete Avocation Supplement.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☒ No |
| c. | Ever had an application for life or health insurance that was declined, required an extra premium or other modification? . . . . . . . | ☐ Yes | ☒ No |
| d. | Replaced or changed any existing insurance or annuity (or any plan to do so) assuming the insurance applied for will be issued? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☒ Yes | ☐ No |
| | (If "Yes," state companies, plans and amounts.) | | |

5

ANSWER Questions 13–18 only if Non-Medical For any "Yes" ... Provide full details ...

13. a. Proposed Insured(s): 1st Insured: Height **5** Ft. **8** In.; Weight **150** Lbs.  Child: Height ___ Ft. ___ In.; Weight ___ Lbs.
   2nd Insured: Height ___ Ft. ___ In.; Weight ___ Lbs.  Child: Height ___ Ft. ___ In.; Weight ___ Lbs.

   b. Proposed Insured's Attending Physician(s) Information:
   Include Physician's Name, Address and
   Tel. # for each Insured. (If none, so state.)
   1st Insured **Dr. XIANG LI, 98 James St, Suite 201, EDISON**
   **732-906-9882**   **NJ 08820**
   2nd Insured

   c. Date and reason last consulted if within the last 5 years:
   1st Insured **1-2000**
   2nd Insured

   d. What treatment was given or recommended?
   (If none, so state.)
   1st Insured **regular checkup**
   2nd Insured

Has any Proposed Insured:
14. a. Ever had or been treated for heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor, cancer, respiratory or neurological disorder? ........ ☐ Yes ☒ No
   b. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? ........ ☐ Yes ☒ No
   (Include medical checkups in the last 2 years. Do not include colds or minor injuries.)
15. a. Ever smoked cigarettes? ........ ☐ Yes ☒ No
   b. Ever used any other form of tobacco? ........ date of last use __/__/__  ☐ Yes ☒ No
   If "Yes" to a. or b., give type of tobacco used _____ date of last use __/__/__
   date cigarette last smoked __/__/__
16. In the last 10 years:
   a. Used, except as legally prescribed by a physician, tranquilizers, barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other mood-altering drugs; heroin, methadone or other narcotics; amphetamines or other stimulants; or any other illegal or controlled substances? ........ ☐ Yes ☒ No
   b. Received counseling or treatment regarding the use of alcohol or drugs including attendance at meetings or membership in any self-help group or program such as Alcoholics Anonymous or Narcotics Anonymous? ........ ☐ Yes ☒ No
17. In the last 10 years, been:
   a. Diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)? ........ ☐ Yes ☒ No
   b. Treated by a member of the medical profession for AIDS or ARC? ........ ☐ Yes ☒ No

| 18. Family History | | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|---|
| Father | 1st Insured | 75 | | |
| | 2nd Insured | | | |
| Mother | 1st Insured | 69 | | |
| | 2nd Insured | | | |
| Sibling | 1st Insured | 39, 32 | | |
| | 2nd Insured | | | |

19. DETAILS/SPECIAL INSTRUCTIONS/ADDITIONAL INFORMATION For each "Yes" answer, give Question Number, name of person(s) affected, and full details. For 11–18 include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

a. ☐ Preliminary Term to: ___ (Month/Day/Year)    b. ☐ Date to save insurance age: 1st Insured ___
   (EWL Only)                                              2nd Insured ___
   ☐ Trusteed    ☐ Non-Trusteed    ☐ Unisex Rates
c. ☐ Issue with Qualified Plan Riders
d. ☐ Other:

| Question No. | Name of Person | Details (Attach additional sheets if more space needed.) |
|---|---|---|
| 12d | ZHOU FANG | Original life insurance face amount is 250,000 monthly premium is $215 — Want change to 30 yrs level term, face amount reduce to $180,000, monthly premium reduce to $48.86 (Quarterly premium is 136.58.) |

AXAGA-2003          5017932, 05-17-2004, 13:51:40          6

**20. COMPLETE IF MONEY IS PAID OR AN APPROVED PAYMENT AUTHORIZATION IS SIGNED BEFORE THE POLICY IS DELIVERED:**
If Guaranteed Issue only is being applied for, complete 20A, otherwise complete 20B.

A. Have the undersigned read and do they agree to the conditions of Equitable's Temporary Insurance Agreement, including:
(i) the requirement that all the conditions of the Agreement must be met before any temporary insurance takes effect, and
(ii) the $1,000,000 insurance amount limitation? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No
*(If "No," or if Question 10a. or 10b. is answered "No," money may not be paid nor an approved payment authorization signed before the policy is delivered.)*
☐ Amount Paid: $ _____ *(Draw checks to the order of Equitable Life.)*  ☐ **Approved Payment Authorization signed.** *(copy attached)*

B. Have the undersigned read and do they agree to the conditions of Equitable's Temporary Insurance Agreement, including:
(i) the requirement that all of the conditions in that Agreement must be met before any temporary insurance takes effect, and
(ii) the $1,000,000 insurance amount limitation? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☒ Yes  ☐ No
*(If "No," or if any Person Proposed for Insurance has been diagnosed or treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC) by a member of the medical profession within the last 10 years or had cancer, a stroke, or a heart attack within the last year, a premium may not be paid nor an approved payment authorization signed before the policy is delivered.)*
☐ Amount Paid: $ _____ *(Draw checks to the order of Equitable Life.)*  ☐ **Approved Payment Authorization signed.** *(copy attached)*

---

**21. SOCIAL SECURITY OR TAX I.D. NUMBER CERTIFICATION.** I, the proposed policyowner, by my signature below, certify under penalties of perjury that (i) the number shown in question 1.A.7., 1.B.7. or 2.9.(1) of this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and (ii) I am not subject to backup withholding because (a) ☐ I am exempt from backup withholding, or (b) ☐ I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) ☐ the IRS has notified me that I am no longer subject to backup withholding, and (iii) ☐ I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item (ii) above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

| Sign Here | Signature of U.S. person(s) | 1st Insured | *[signature]* | Date ▶ | 5-24-04 |
| | | 2nd Insured | | Date ▶ | |
| | | Policyowner | | Date ▶ | |

**AGREEMENT.** Each signer of this application agrees that:

(1). The statements and answers in all parts of this application are true and complete to the best of my (our) knowledge and belief. The Equitable may rely on them in acting on this application.

(2). Equitable's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect if money is paid or an approved payment authorization is signed, before the policy is delivered. Temporary Insurance is not provided for a policy or benefit applied for under the terms of a guaranteed insurability option or a conversion privilege.

(3). Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full initial premium for it is paid, or an approved payment authorization is signed, while the person(s) proposed for insurance is (are) living; (b) before any Register Date specified in this application; and (c) unless to the best of my (our) knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time the full initial premium is paid or an approved payment authorization is signed.

(4). No financial professional or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, or to waive any of Equitable's rights or requirements. Equitable shall not be bound by any information unless it is stated in Application Part 1 or Part 2.

**FRAUD WARNING NOTICE**

*Arkansas/Kentucky/New Mexico/Pennsylvania:* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

*Colorado:* It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a contract owner or claimant for the purpose of defrauding or attempting to defraud the contract owner or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

*Florida:* Any person who knowingly and with intent to injure, defraud or deceive an insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

*Maine/D.C./Louisiana/Oregon/Tennessee:* It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits.

*Nebraska:* Any person who knowingly and with intent to defraud any insurance company files an application or statement of claim containing any materially false, misleading or incomplete information may be guilty of a crime which may be punishable under state or Federal law.

*New Jersey:* Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

*Texas:* Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

*Ohio:* Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an enrollment form or files a claim containing a false or deceptive statement is guilty of insurance fraud.

*Vermont:* Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement, may be found guilty of fraud.

*All other states (except New York and Virginia)\* where fraud warnings apply:* Any person who knowingly and with intent to defraud any insurance company files an application or statement of claim containing any materially false, misleading or incomplete information is guilty of a crime which may be punishable under state or Federal law.
\* Fraud warning statements do not apply in New York and Virginia.

AXAGA-2003

7

5017932,05-17-2004,13:51:40

**ACKNOWLEDGEMENT OF UNDERWRITING PRACTICES.** I (we) acknowledge that I (we) have received a statement of the Underwriting Practices of Equitable which describes from whom and why Equitable obtains information on my (our) insurability, to whom such information may be reported and how I (we) may obtain it. The statement also contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS:**

**TO OBTAIN HEALTH INFORMATION.** I (we) authorize any physician, hospital, clinic, medical practitioner, medical testing laboratory, pharmacy or other health care provider, health plan or insurance company (including Equitable, with respect to other Equitable coverages) and the Medical Information Bureau to disclose to Equitable and its authorized representatives any and all information, whether fact or opinion, they may have about any diagnosis, treatment and prognosis regarding my (our) past, present or future physical or mental condition.

**TO OBTAIN NON-HEALTH INFORMATION.** I (we) authorize any employer, business associate, government unit, financial institution, consumer reporting agency, the Medical Information Bureau, my (our) broker-dealer and/or my (our) insurance agency and my (our) financial professional to disclose to Equitable and its authorized representatives any information they may have about my (our) occupation, avocations, finances, driving record, character and general reputation. I (we) authorize Equitable to obtain investigative consumer reports, as appropriate.

**PURPOSE OF AUTHORIZATIONS.** I (we) understand that the information obtained will be used by Equitable to determine my (our) eligibility for life insurance coverage and such other uses specified in the Underwriting Practices attached to this application. In addition, information may be disclosed to the Medical Information Bureau (MIB) who, upon request, may disclose such information about you in its file to another member company with whom you apply for life or health insurance or to whom a claim for benefits may be submitted; when requested by a government agency; in connection with a legal or arbitration proceeding; or for other purposes as required or permitted by applicable law. If a policy is issued to me (us), this information may also be used in the future to administer my (our) policy and process claims made under the policy.

**COVERAGE CONDITIONS.** I (we) understand that Equitable is conditioning the issuance of coverage on the provision of this authorization, and that, while I (we) may refuse to sign this authorization, my (our) refusal to do so could result in coverage not being issued.

**ADDITIONAL AUTHORIZATIONS.** You have advised me (us) that Equitable may request additional authorizations in order to obtain the information Equitable needs to complete its review of my (our) application and, if the policy is issued, in connection with any claim asserted under the policy. I (we) understand that I (we) am (are) not obligated to provide these additional authorizations but that, if I (we) choose not to provide them, this application and any claim made under the policy, if issued, may be rejected.

**DURATION.** Unless otherwise revoked, I (we) agree that this authorization will expire on the earlier of the date that Equitable declines my application for coverage or, if a policy is issued, 24 months from the date of my (our) application. I (we) understand that I (we) may revoke my (our) authorizations at any time. No termination or revocation shall affect (1) any action taken by Equitable in reliance on this authorization or (2) any right granted Equitable by law to contest a claim under the policy or policy terms. If I (we) choose to revoke any authorization, this application and any claim made under the policy, if issued, may be rejected. My (our) revocation must be submitted in writing to: Chief Underwriter, The Equitable Life Assurance Society of the United States, 1290 Avenue of the Americas, New York, New York 10104.

**COPY OF AUTHORIZATIONS.** I (we) have a right to ask for and receive true copies of this Acknowledgement and Authorization Form and all other authorizations signed by me (us). I (we) agree that reproduced copies will be as valid as the original.

I (we), the undersigned, by my (our) signature(s) below understand that I (we) am (are) agreeing to all the terms and conditions of this application, including, but not limited to, the Acknowledgement and Authorization.

Dated at City ___NORTH BRUNSWICK___

State ___NJ___

on ___5-24-04___

Signature of Financial Professional _____

Print Financial Professional's Name ___HARRIS TANG___

X _____
Signature of 1st Proposed Insured, Authorized Representative or Applicant, if Proposed Insured is a Child. Issue Ages 0-14

X _____
Signature of 2nd Proposed Insured, Authorized Representative or Applicant. If Proposed Insured is a Child. Issue Ages 0-14.

X _____
Signature of Owner if not Proposed Insured or Applicant.
(If a corporation, show firm's name and signature of authorized officer.)

**Application Part 2 To:** ☒ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

☐ THE EQUITABLE OF COLORADO, INC.

## PARAMEDICAL

Reason for submission of this form: ☐ New Policy  ☒ Policy Change  ☐ Reinstatement

**1. a.** Proposed Insured (Please Print)

| First Name | Middle Initial | Last Name |
|---|---|---|
| ZHOU | | FANG |

**b.** Height: 5 ft 5 in  **c.** Weight 168 lbs.
**d.** Birth Date: Mo. 01  Day 11  Yr. 66
**e.** ☐ Male  ☐ Female

**2. a.** Name and address of personal physician (or medical facility used instead): *(If none, so state)*  DR. XING LI - 98 JAMES ST.
**b.** Date and reason last consulted if within the last 5 years  NEVER SAW HIM ; EDISON, NJ 08820

**c.** What treatment was given or recommended? *(If none, so state)*

(For all "Yes" answers to Questions 3-9, circle items that apply.)

| | Yes | No |
|---|---|---|
| **3.** Has Proposed Insured ever had or been treated for: | | |
| **a.** Disease or disorder of eyes, ears, nose or throat? | ☐ | ☒ |
| **b.** Dizziness, fainting, convulsions, paralysis or stroke, psychiatric, psychological or emotional disturbance, mental or nervous disease or disorder? | ☐ | ☒ |
| **c.** Shortness of breath, blood spitting, bronchitis, asthma, emphysema, tuberculosis or other chronic respiratory disease or disorder? | ☐ | ☒ |
| **d.** Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels? | ☐ | ☒ |
| **e.** Ulcer, hernia, colitis, intestinal bleeding, jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| **f.** Sugar, albumin, blood or pus in urine, stone or other disease or disorder of kidney or bladder? | ☐ | ☒ |
| **g.** Diabetes, cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder? | ☐ | ☒ |
| **h.** Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints? | ☐ | ☒ |
| **i.** Deformity, lameness or amputation? | ☐ | ☒ |
| **j.** Allergies; anemia; other blood or lymph disease or disorder? | ☐ | ☒ |
| **k.** Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy? | ☐ | ☒ |
| **4.** Is Proposed Insured now under observation or taking treatment? | ☐ | ☒ |
| **5.** Has Proposed Insured, within the last 10 years, been: | | |
| **a.** Diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)? | ☐ | ☒ |
| **b.** Treated by a member of the medical profession for AIDS or ARC? | ☐ | ☒ |
| **6.** Has Proposed Insured, within the last 10 years: | | |
| **a.** Used, except as legally prescribed by a physician, tranquilizers, barbiturates or other sedatives; marijuana, cocaine, hallucinogens or other mood-altering drugs; heroin, methadone or other narcotics; amphetamines or other stimulants, or any other illegal or controlled substances? | ☐ | ☒ |
| **b.** Received counseling or treatment regarding the use of alcohol or drugs? | ☐ | ☒ |
| **7.** Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months? | ☐ | ☒ |

| | Yes | No |
|---|---|---|
| **8.** Other than as stated in answers to Questions 2-6, has Proposed Insured within the last 5 years: | | |
| **a.** Consulted or been examined or treated by any physician or practitioner? | ☐ | ☒ |
| **b.** Had any illness, injury, or surgery? | ☐ | ☒ |
| **c.** Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☒ |
| **d.** Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☒ |
| **e.** Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed? | ☐ | ☒ |
| **9.** Has Proposed Insured, within the last 12 months: | | |
| **a.** Smoked cigarettes? | ☐ | ☒ |
| **b.** Used any other form of tobacco? (Give full details.) | ☐ | ☒ |

**10.** Family History

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 75 | | |
| Mother | 69 | | |
| Brothers/Sisters | 41 & 43 | | |

DETAILS FOR "YES" ANSWERS: Include: **i.** Question Number. **ii.** Diagnosis and Treatment. **iii.** Results. **iv.** Dates and Duration. **v.** Names and Addresses of all attending physicians and medical facilities (If additional space is needed, please attach a separate sheet, dated, signed and witnessed as below).

||||| 6191815191 ||||||

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on the application or making the policy change or reinstatement.

Dated NO. BRUNSWICK, NJ  06-16-04  X _(signature)_
      City      state      Mo  Day         Signature of Proposed Insured

Witness (Must be Examiner): _(signature)_

(Ed. 6-89)

180-225D Cat # 125230

1

# REVOCABLE LIVING TRUST AGREEMENT

TRUST AGREEMENT, made this 1ˢᵗ day of December, 2011, between ZHOU FANG, of 351 State Road, Princeton, New Jersey, 08540, hereinafter called "Grantor" and ENGUANG FANG, of 351 State Road, Princeton, New Jersey, 08540, and EN-KUANG DAVID CHENG, of 28 Groendyke Lane, Plainsboro, New Jersey, 08536, acting jointly, hereinafter referred to as "Trustee".

## ARTICLE I - IDENTIFICATION - FAMILY MEMBERS

1.1 Spouse. My spouse's name is AMY L. FANG. All references in this Trust to "my spouse" are to said spouse.

1.2 Child or Children. I have two (2) children, ENGUANG FANG and PHOEBE FANG. All references in this Trust to my "child or children" are to said named child or children.

## ARTICLE II - TRUST PROPERTY

2.1    Assets. I have transferred, or shall forthwith transfer, those assets listed on Schedule A. With respect to such assets, the Trustee shall invest, reinvest and administer such assets in accordance with the terms of this Trust Agreement. I or any other person may, with the consent of the Trustee, transfer or assign, from time to time, additional property to the Trustee.

2.2    Administration of Trust During Lifetime.
   (a) The Trustee shall pay the income and principal (even to the extent of completely exhausting the principal) from time to time to me, or to such person or persons and in such proportions, all as I the Grantor may from time to time direct. During any period that in the opinion of the Trustee, I am unable to so direct, the Trustee is authorized during my life to distribute such amount of net income and of the principal (even to the point of completely exhausting the principal) to, or apply the same for the benefit of, one or more or all of a class consisting of me, my spouse and my children as the Trustee in its sole and absolute discretion deems advisable to provide adequately and properly for the comfortable support, maintenance, welfare, education, medical care and comfort of one or more or all of said class. In exercising such discretion, the Trustee shall consider my personal needs and resources and my relationship to such persons. The Trustee shall accumulate any undistributed income and annually add the same to principal.

   (b) Upon my death or incapacity, the successor Trustee of this Trust Agreement shall continue to be ENGUANG FANG and EN-KUANG DAVID CHENG, acting jointly. My incapacitation shall be evidenced by the written statement of two licensed physicians that I am unable to properly manage my financial affairs. Such determination shall continue until such time that the Trustee receives a written statement of two licensed physicians that my capacity has been restored.

## ARTICLE III - AMENDMENT AND REVOCATION

3.1    Amendment and Revocation.
(a) At any time during my life, I as Grantor shall have the right and power to alter, amend or revoke this Agreement, either in whole or in part, or to remove any Trustee, or to appoint one or more Co-Trustees or successors Trustees, without the consent of any Trustee or beneficiary hereunder or under any policy of insurance, by written notice, acknowledged and delivered to the Trustee other than by Will. Notwithstanding the foregoing, the duties, responsibilities and rate of compensation of a Trustee shall not be altered or modified without that Trustee's written consent. These rights are personal to me and may not be exercised by any person having a Power of Attorney.

(b) If this Trust is completely revoked, all Trust property held by the Trustee shall be transferred and delivered to me or as I otherwise may direct in the written notice to the Trustee. In the event of my death prior to complete transfer and delivery of the Trust property, then the Trust property shall be deemed to have been transferred and delivered to me, or as I otherwise directed, as of the date of my written notice to the Trustee of complete revocation. The foregoing shall not be construed as relieving the Trustee from the duty to make complete transfer and delivery as provided in the written notice.

## ARTICLE IV - DISPOSITION OF TRUST BALANCE

4.1    Residue to Trustee. Upon my death, all the balance of this Trust (hereinafter sometimes referred to as "residuary estate"), wherever situated, including lapsed devises, but expressly excluding any property over which I may have a power of appointment at my death, shall continue to be held by the Trustee.

4.2    During Life of Spouse. During my spouse's lifetime, my Trustee shall pay to, or apply for the benefit of, a class composed of my spouse and any one or more of my living children and more remote descendants, such amounts of income and principal from time to time as my Trustee, with sole and absolute discretion, deems necessary and advisable, whether in equal or unequal shares, for the maintenance, health and support in the accustomed manner of living, education, including vocational, college and post-graduate education, of a member of such class, subject, however, to the provisions of Article V, Section 5.8.

In the exercise of such discretion, my Trustee may take into account funds available from other sources for such needs of each beneficiary, including assets passing outright to my spouse. My primary concern is to provide for my spouse, and I request that my Trustee exercise such discretion liberally in distributing principal to or for the benefit of my spouse.

4.3    Distribution. Upon the death of my spouse, or on my death if my spouse does not survive me, all of the trust balance shall be divided into equal shares and distributed, one share to each child who

2

survives me and one share for each child who may then be deceased, leaving descendants then surviving, to be distributed to such descendants, per stirpes.

4.4    Beneficiaries Under Age 21. (a) If a beneficiary under age twenty-one (21) becomes absolutely entitled to any property, such property shall immediately vest in such beneficiary. The fiduciary in its discretion may distribute the property directly to the beneficiary, directly in payment of the debts or expenses of such beneficiary, to the Guardian of the person or property of such beneficiary, the parent or parents of such beneficiary, to a custodian for such beneficiary under a Uniform Transfers or Gifts to Minors Act, to any other person who shall have the care and custody of the person of such beneficiary, or to the Trustee named hereunder. If property is distributed to the Trustee, the Trustee shall hold the property as a separate trust for the benefit of the beneficiary and shall pay to or apply for his or her benefit all the net income and so much of the principal at any time and from time to time as the Trustee with sole discretion believes advisable to provide adequately for the beneficiary's health, maintenance, education and support in reasonable comfort.

(b)    All funds not paid to or applied for the beneficiary in accordance with Section 4.4(a) shall be paid to the beneficiary at age twenty-one (21) or to the beneficiary's personal representative in the event of the beneficiary's death prior to age twenty-one (21). Upon obtaining a receipt from the person to whom distribution is made, the Trustee shall be relieved of any further obligations with respect to the property distributed.

4.5    Descendants Not Surviving. If at any time at or after my death no descendants of mine are then living to whom any part of this Trust may be distributed, then and in that event, I direct that the balance of the trust fund be distributed outright as follows: fifty percent (50%) to those persons whom, and in those proportions in which, such property would have been distributable if I had then died the owner thereof, intestate and a resident of the State of New Jersey; and fifty percent (50%) to those persons whom, and in those proportions in which, such property would have been distributable if my spouse had then died the owner thereof, intestate and a resident of the State of New Jersey.

4.6    Perpetuities Saving Clause. Notwithstanding any other provision of this Trust, the Trust created hereunder shall vest in and be distributed to the persons then entitled to the income from such property within the time period specified under N.J.S.A. 46:2F-1, et seq., as amended, unless vested sooner as provided in this instrument. The Trustee shall distribute the remaining portion of Trust property outright to the persons then entitled to receive the income from the Trust in the proportions in which they are beneficiaries of such income, and if no proportions are specified, then in equal shares.

## ARTICLE V - TRUSTEE PROVISIONS

5.1    Fiduciary Appointment. In the event that either ENGUANG FANG or EN-KUANG DAVID CHENG should fail to serve as Co-Trustee for any reason, then I appoint JOSEPH TING, of 262 Mount Lucas Road, Princeton, New Jersey, 08540, to serve as successor Co-Trustee.

3

5.2    Bond Waiver. No bond or other security shall be required of any Trustee serving hereunder at any time in any jurisdiction, including any successor, any provisions of law to the contrary notwithstanding.

5.3    Co-Trustee Appointments. In the event that at any time the appointment of any Trustee serving under any Trust of this instrument would cause the principal and/or the income of such Trust to be subject to any federal or state income, gift or estate tax by any beneficiary of such Trust hereunder, by reason of such beneficiary's serving as such Trustee, or the appointment of such Trustee would cause such Trust to fail or be disqualified under such applicable state law, then such Trustee shall appoint an additional individual or corporate Trustee whose appointment under the tax or other law will not cause such Trust to fail or be disqualified or the income or principal to be included in such beneficiary's federal or state income, gift or estate tax.

5.4    Trustee Resignation. The Trustee and any successor Trustee of any Trusts established hereunder shall have the right and power to resign at any time by thirty (30) days written notice to me, if then living, or if I am then deceased, to any Co-Trustee then serving and the current adult income beneficiary or beneficiaries of the Trust.

5.5    Appointment of Successor Trustee. Upon the resignation of a Trustee after my death, and if no successor is appointed hereunder, a majority of the current adult Trust income beneficiaries shall appoint one or more successor individual and/or corporate Trustees. Such appointment shall be made by written instrument delivered to the then acting Trustee.

5.6    Effective Date of Resignation. The resignation of a Trustee shall become effective upon the appointment and written acceptance of the successor Trustee. If no successor is appointed and qualifies within thirty days of the resignation of the Trustee, then the resigning Trustee or any adult beneficiary may apply to a court of competent jurisdiction for the appointment of a successor Trustee.

5.7    Successor Trustee Authority. Any successor Trustee shall succeed to all the powers, duties and discretions herein conferred upon the Trustee named herein. In the event that a successor corporate Trustee so appointed has its principal office in a jurisdiction other than New Jersey, then, except as expressly provided herein, the Trusts shall be administered in accordance with the laws of such other jurisdiction.

5.8    Sole Individual Trustee Acting. If at any time there shall be acting as sole Trustee of a Trust hereunder an individual who is also a beneficiary of such Trust or who has an obligation to support a beneficiary of that Trust, then and in that event, such Trustee, in conjunction with all adult individuals having a vested income or Co-Trustee (whether such bank or Trust company is located in the state in which my Will is probated or otherwise), to serve with such Trustee and to act as successor Trustee. Such designation shall be in writing and become effective upon the qualification of such Trustee in the office in which my Will is probated. It is my intention that no individual who is a beneficiary shall act as sole Trustee hereunder.

4

5.9    Trust Uneconomical. If at any time the Trustee who is neither a beneficiary nor obligated to support a beneficiary determines that the fair market value of any Trust under this instrument is FIFTY THOUSAND ($50,000) DOLLARS or less, the Trustee may, with sole discretion, terminate and distribute said Trust to the persons then entitled to receive or have the benefit of the income from the Trust in the proportions in which they are entitled thereto, or if their interests are indefinite, then in equal shares.

5.10    Compensation of Fiduciaries. The Trustee shall be entitled to reasonable compensation for services hereunder in accordance with the New Jersey statutory rate then prevailing. Every fiduciary shall be reimbursed for the reasonable costs and expenses incurred in connection with the administration of the Trusts.

5.11 Taxes and Expenses. (a) Anything hereinabove to the contrary notwithstanding, the Trustee shall contribute to the Executor or Administrator of my estate such amounts at such time or times as said Executor or Administrator shall certify to the Trustee as being required to pay all estate, inheritance, legacy, succession and transfer taxes or charges (including any interest or penalties thereon) due and imposed by reason of my death (other than any generation-skipping transfer tax, tax on property over which I have a power of appointment, or tax imposed on qualified terminable interest property, which taxes are to be paid according to applicable law or from said property); all pecuniary bequests of my Last Will and Testament and any Codicil thereto; and all debts, funeral expenses, and administration expenses, including commissions and counsel fees, if, and only to the extent that my residuary probate estate shall be insufficient to meet all such taxes, expenses, debts and charges. The certification of such Executor or Administrator shall be accepted by the Trustee as conclusive, and payments in accordance therewith shall be a full and complete discharge to the Trustee. Payments shall be made exclusively out of funds or property (or the proceeds thereof) which are included in my gross estate for federal estate tax purposes, and so far as possible, are included in my assets subject to state death taxes.

(b)    Notwithstanding the foregoing, the Trustee upon my death shall pay federal estate taxes from the assets of the trust to the extent that the trust holds United States Treasury Bonds eligible for redemption at par in payment of my federal estate taxes.

## ARTICLE VI - GENERAL PROVISIONS

6.1    Insurance.

(a)    Payment of Premiums. In the event the assets of this Trust shall at any time consist of life insurance policies, annuity contracts, accident policies, pension, profit sharing, individual retirement or other retirement plan or death benefits (hereunder referred to as "policies") of which I have designated the Trustee as beneficiary, the Trustee shall be under no obligation to pay the premiums which may become due and payable under the provisions of any such policies, or to make certain that such premiums are paid by me or others, or to notify any persons of the non-payment of

5

such premiums, and it shall be under no responsibility or liability of any kind in case such premiums are not paid.

(b)    _Exercise of Rights_. During my lifetime I reserve the absolute right to exercise any and all incidents of ownership, including the right to change the beneficiary at any time or times, to receive the dividends, to borrow thereon, to convert the policy into other forms of insurance, to collect the cash values, or to permit the policy to lapse. The Trustee shall execute such releases and other papers as may be required to effectuate my ownership of such policies.

(c)    _Collection of Policy Proceeds_. Upon my death, with respect to any such policy, the Trustee shall take such action as is appropriate for the collection of the proceeds of the policies, but shall not be required to institute legal action unless secured to its satisfaction for all expenses and liabilities it might incur. The Trustee shall collect only the net proceeds of policies payable to it. All loans, advances or other charges against any policy shall be deducted from the proceeds thereof. The Trustee, in its discretion, may accept any optional mode of payment provided in any policy.

(d)    _Responsibility of Third Party_. No third party making payment of policy proceeds to the Trustee shall be responsible for the application or disposition of such proceeds by the Trustee. Receipt by the Trustee of such proceeds shall be a full discharge of the liability of such third party under such policy.

6.2    _Discretionary Powers_. No individual Trustee who is a beneficiary of a Trust hereunder or obligated to support a beneficiary hereunder shall participate in deciding whether or to what extent principal or income shall be distributed or applied to or for his or her benefit or for the benefit of any person to which such Trustee has an obligation of support, or whether any receipt or disbursement shall be allocated in whole or in part to or against principal or income, or to terminate any Trust hereunder, unless such decision is limited by an ascertainable standard as defined in I.R.C. § 2041(b). All said powers shall be exercisable by the other Trustee serving hereunder, and if there be none, such discretion shall not be exercised until a Trustee is appointed who is capable of exercising the same. Notwithstanding the foregoing, in no event may any Trustee exercise any discretion that would discharge his or her legal obligation to support a beneficiary of a Trust.

6.3    _Interest Non-Assignable_. No beneficiary shall, voluntarily or involuntarily, have any right to anticipate, sell, assign, mortgage, pledge, or otherwise dispose of or encumber all or any part of my Trust estate, including income, be liable for the debts or obligations, including alimony, of any beneficiary or be subject to attachment, garnishment, execution, creditor's bill, or other legal or equitable process.

6.4    _Facility of Payment_. The Trustee may make distributions and payments of income or principal to or for the benefit of any beneficiary who is a minor, or who in such fiduciary's judgment is incompetent or incapacitated, in any one or more of the following ways: (1) directly to such beneficiary or to his or her attorney-in-fact; (2) directly in payment of the debts or expenses of such beneficiary; or (3) to the Guardian of the person or property of such beneficiary, the parent or parents

of such beneficiary, a custodian for such beneficiary under a Uniform Transfers or Gifts to Minors Act, or any other person who shall have the care and custody of the person of such beneficiary. There shall be no duty to see to the application of funds so paid, and the receipt of such person shall be full and sufficient discharge.

## ARTICLE VII - FIDUCIARY POWERS

7.1    Fiduciary Powers. My Executor and Trustee (including any substitute or successor Executor or Trustee) shall have the following powers, in addition to, and not in limitation of, those powers under N.J.S.A. 3B:14-23, or similar provision of subsequent law:

(a)    To retain any investments or property owned by me at the time of my death or acquired thereafter for so long as shall be deemed advisable.

(b)    To invest and reinvest and acquire by purchase, exchange or otherwise, and retain, any kind of realty and personalty, including common stocks, bonds or other securities and unsecured obligations, undivided interests and interests in investment Trusts, mutual funds, options, leases, mortgages on property wherever located, in such property and in such proportions of such property wherever located as they shall deem advisable, including custody or brokerage accounts (including margin accounts), common Trust funds, banking deposits or stock of a corporate fiduciary if one is named, even though such investments are not of the character or proportions approved by applicable law for the investment of such funds;

(c)    To make repairs, manage, mortgage, lease, improve, alter, abandon or subdivide any real estate or grant easements with respect thereto, regardless of location, for periods to begin presently or in the future without regard to any statutory restriction on leasing and even though such period may extend beyond the term of the estate or of any Trust;

(d)    To sell or exchange or otherwise dispose of realty or personalty received by them or any investment at or after my death at such time, price and terms, wholly or partly on credit as shall seem advisable at public or private sale, and exercise stock options, all without notice to any beneficiary or court approval;

(e)    To amortize bond premiums and to borrow money for purposes of my estate or any Trust and pledge or mortgage any property in order to secure repayment from any source, including, but not limited to, my Executor or Trustee, regardless of any relationship to me or to a fiduciary acting hereunder, for periods and conditions as shall be deemed advisable, and secure repayment of the amount borrowed by pledge or mortgage of any property;

(f)    To pay the costs of ancillary and similar proceedings in other jurisdictions from funds or property held in the state of my domicile;

7

(g)    To pay in absolute discretion of the fiduciary any devise or distributions in cash or in kind or partially in each, to allot different kinds or disproportionate shares or undivided interests in property for the purpose of distribution in kind or setting up any Trust, and to determine which assets shall be sold, to select such securities or property as they deem advisable, without regard to differences in tax bases of any such property and without notice to or consent of any beneficiary; and for this purpose, the determination of my Executor or my Trustee as to the value of any property shall be conclusive;

(h)    To vote in person or proxy and to become party to any voting Trust agreement for any securities held and to hold property in my Executor's or Trustee's own name, in the name of a nominee or in bearer form;

(i)    To compromise, settle, renew, assign, alter, extend, compromise, release with or without consideration, debts, claims or controversies asserted against the fiduciary which affect of my estate or Trust assets, and to lend money to such persons and/or entities regardless of any relationship to me or to a fiduciary acting hereunder but with adequate interest and security as shall be deemed advisable, all without obtaining the consent of any beneficiary;

(j)    To establish another Trust or to merge any Trust created hereunder with any other Trust created by me or my spouse by Will or intervivos Trust agreement, provided the beneficiaries, Trust terms, and tax characteristics thereof are substantially the same;

(k)    I may designate my estate or a Trust established under this Trust as the beneficiary of certain individual retirement accounts or qualified employee benefit plan funds or similar items ("Benefits") which I maintain. The fiduciary shall receive such Benefits from the custodian of each said plan pursuant to the respective beneficiary designations then in effect and may make any election regarding such distributions as the fiduciary deems most beneficial for the beneficiaries hereunder. The portion of each such payment received by the fiduciary attributable to income earned in the said plan in the year of the distribution shall be allocated to income hereunder and the balance of each such payment shall be allocated to principal hereunder, even though the entire such payment may be subject to federal income tax;

(l)    To exercise or not exercise any election, option, or deduction of administration expenses in connection with the computation of federal estate tax or federal income tax liabilities of my estate, regardless of the fact that the federal estate tax on my estate is thereby increased or that there is a change in the proportions in which various persons share in my estate; to allocate between, or charge or credit to, income or principal any money, property or expenses of my estate or any Trust in such manner as shall be deemed advisable, without regard to any statutory restrictions; and to establish and maintain reserves for depreciation on any property subject thereto under generally accepted accounting principles as a charge against income and a credit to principal. My fiduciaries shall have no liability for or obligation to make compensating adjustments between principal and income or in the interests of the beneficiaries by reason of having made or not made any such election. Any decision made by my fiduciaries with respect to the foregoing shall be binding and

8

conclusive on all persons and not subject to question by any beneficiary or court, and my fiduciaries shall have no liability as a result of any such decision;

(m)    My Trustee shall not be required to make physical division of the separate Trust shares established hereunder except when necessary for distribution of principal, but may, in such Trustee's discretion, keep the Trust principal in one or more consolidated funds in which the separate Trust shares shall have undivided interests;

(n)    To join with my spouse, or my spouse's estate, in the execution and filing of any income tax return for any year and also consent to split any gifts made by my spouse for federal gift tax purposes as being made one-half by me, even if it results in additional liabilities for my estate;

(o)    To employ and pay compensation of accountants, appraisers, legal counsel, brokers, investment counsel and grant discretionary authority to such investment counsel and other agents, regardless of their relationship to me or to a fiduciary acting hereunder, and to pay interim payments in reasonable amounts to Executor's and Trustee's commissions and attorney's fees on account in the absolute discretion of the fiduciary and to pay expenses of such persons without beneficiary or court approval, but subject to allowance or disallowance on the settlement of their accounts;

(p)    To take such action in collecting the proceeds of any life insurance policies, annuity contracts, accident policies, pension and profit sharing plans and other death benefits payable to the Trustee (after deducting all charges by way of advances, loans or otherwise) as the Trustee deems best, paying the expense thereof from the Trust property.  Notwithstanding the foregoing, policy proceeds which are not otherwise included in my estate for federal estate tax purposes shall not be allocated to the Marital Trust, nor shall such proceeds be subject to or used for the satisfaction of debts, taxes or administration expenses of my estate;

(q)    To allocate, in the sole and absolute discretion of the fiduciary, any adjustment to the basis of any property acquired from me as decedent as defined in Section 1022 of the Code for the purposes of any income, estate, inheritance or other tax (whether or not such property is included in my probate estate) in such amount and in such proportions as the fiduciary shall determine and to exclude any such property from such allocation as provided in Section 1022 of the Code.  The determination of the fiduciary as to whether and to what extent to make said allocation shall be absolute and conclusive, regardless of the personal interest any fiduciary may have in the consequences of such allocation.  The fiduciary shall not be liable, responsible or accountable, in court or in otherwise, to any beneficiary, for the consequences of the exercise, the manner of the exercise, or failure to exercise the power granted under this subparagraph.

(r)    To retain and continue my interest in any business or enterprise, in which I may own or in which I have an interest, to employ agents to manage and operate any business without liability for acts of such agent, or for any loss, liability, or indebtedness of any such business if the management is selected or retained with reasonable care; and use funds of my estate or any Trust hereunder in the management of such business; to incorporate any such business and to hold the stock as an investment or to become

9

a member, partner, general, limited or special, in any business which my Executor or Trustee deems advisable for the benefit of my estate or to take any other action with respect to any such business, interest, partnership, limited liability company or corporation; to make an election to be an ESBT Trust or S corporation under §1361 et seq. of the Code; or to make such election so that any such corporation which is or is elected to be an S corporation may continue to be an S corporation; to assist any beneficiary hereof to make the election provided in §1361(d) (2) of the Code so that such Trust shall be a qualified subchapter S Trust.

(s)    In addition to the investment powers conferred above and by law, the fiduciary is authorized (but is not directed), to acquire and retain investments not regarded as traditional for estates or Trusts, including investments that would be forbidden by the Prudent Investor Act or similar law. The fiduciary may in the sole discretion of the fiduciary invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property, and in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, limited liability companies, corporations, mutual funds or other form of participation or ownership whatsoever.  In making investments the fiduciary may disregard the following factors: (i) whether a particular investment will produce a reasonable rate of return or result in the preservation of principal and (ii) whether any or all of the investments would traditionally be classified as too risky or speculative for estates or Trusts.  I intend the fiduciary to have sole discretion in determining what constitutes acceptable risk and what constitutes prudent investment strategy.

My purpose in granting the foregoing authority is to modify the Prudent Investor Act or any similar law insofar as the rule would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself.  Accordingly, the fiduciary shall not be liable for any loss in value of an investment merely because of the nature of the investment or the degree of risk presented by the investment, but shall be liable if the procedures of the fiduciary in selecting and monitoring the investment are proven by affirmative evidence to have been negligent and such negligence was the proximate cause of the loss.

(t)    To change the name or situs of any Trust at any time.

(u)    Except as otherwise provided herein, to retain as an asset of any Trust hereunder any real property, or interest therein, or other personal use property for the benefit of any beneficiary hereunder, which I or any Trust hereunder may own at the time of my death or at any time, even though such asset is not income-producing.

(v)    My fiduciary shall have the right to disclaim, release or renounce, at any time, any one or more of the powers or options provided herein with respect to my estate or any Trust hereunder, including but not limited to those powers relating to the management and investment thereof and the distribution of income and principal therefrom.

(w)    To inspect and monitor businesses and real property (whether held directly or through a partnership, corporation, Trust, or other entity) for environmental conditions or possible violations

10

of environmental laws; to remediate environmentally damaged property or to take steps to prevent environmental damage in the future, even if no action by public or private parties is currently pending or threatened; to abandon or refuse to accept property that may have environmental damage; and to expend Trust property to do the foregoing; and no action or failure to act by the Trustee pursuant to this paragraph shall be subject to question by any beneficiary;

      (x)    My fiduciary may allocate receipts from pass through entities to income or principal.

      (y)    My fiduciary shall have the power to allocate capital gain between income and principal.

7.2    Accounting. It is my desire to avoid the expense and delay of a public or judicial accounting of the administration of the Trusts created hereunder. An accounting of my Trustee approved in writing by all the then current competent beneficiaries of income and principal and the competent beneficiaries who would be entitled to the Trust if it were then to terminate shall be conclusive and binding upon all persons having an interest in the Trusts created hereunder, directly or indirectly. This shall not preclude any fiduciary from electing to submit an account for judicial settlement.

7.3    Delegation. Any fiduciary may delegate to the other fiduciaries the right to exercise any power (discretionary, administrative or otherwise) and may revoke the delegation at any time by delivery of an acknowledged instrument to such other fiduciaries.

## ARTICLE VIII - DEFINITIONS

8.1    Survival Presumptions. If any beneficiary fails to survive me by ninety (90) days, then such beneficiary shall be deemed to have predeceased me.

8.2    Definitions. The singular shall be deemed to include the plural, the masculine the feminine, and vice versa. Headings and captions are for reference only.

8.3    Situs. The terms and regulations of this Agreement shall be construed, regulated and governed as to administration and as to validity and effect by the laws of the State of New Jersey. To minimize any tax in respect of any trust, or any beneficiary thereof, or for such other purpose as he deems appropriate, the Trustee may, in his sole and absolute discretion, remove all or any part of the property of, or the situs of administration of such trust from one jurisdiction to another and elect, by an instrument filed with the trust records, that thereafter such trust shall be construed, regulated and governed as to administration by the laws of such other jurisdiction.

11

8.4    Acceptance of Trusts.  The Trustee hereby accepts the Trusts established hereunder.

IN WITNESS WHEREOF, , Grantor, and , Trustee, have signed and sealed this Agreement on this 1st day of December, 2011.

_____          _____
Witness                                               ZHOU FANG, Grantor

_____          _____
Witness                                               ENGUANG FANG, Trustee

_____          _____
Witness                                               EN-KUANG DAVID CHENG, Trustee

12

STATE OF NEW JERSEY    :
                       :
COUNTY OF MERCER       :

I CERTIFY that on the 1st day of December, 2011,
        ZHOU FANG              personally came before me and acknowledged under oath, to
my satisfaction, that this person (or if more than one, each person):
        (a) is named in and personally signed this document; and
        (b) signed, sealed and delivered this document as his or her act and deed.

DONALD W. REEDER
AN ATTORNEY AT LAW
OF NEW JERSEY

STATE OF NEW JERSEY    :
                       :
COUNTY OF MERCER       :

I CERTIFY that on the 1st day of December, 2011,
        EN GUANG FANG             personally came before me and acknowledged under
oath, to my satisfaction, that this person (or if more than one, each person):
        (a) is named in and personally signed this document; and
        (b) signed, sealed and delivered this document as his or her act and deed.

DONALD W. REEDER
AN ATTORNEY AT LAW
OF NEW JERSEY

STATE OF NEW JERSEY    :
                       :
COUNTY OF MERCER       :

I CERTIFY that on the 1st day of December, 2011,
        EN-KUANG DAVID CHENG        personally came before me and acknowledged
under oath, to my satisfaction, that this person (or if more than one, each person):
        (a) is named in and personally signed this document; and
        (b) signed, sealed and delivered this document as his or her act and deed.

DONALD W. REEDER
AN ATTORNEY AT LAW
OF NEW JERSEY

13

## SCHEDULE "A"

$100 cash

14

# PNCBANK

```
                060
        FRANKLIN PARK (032)
          3151 ROUTE 27
      FRANKLIN PARK NJ 08823
          Cashbox 06 AM

* Deposit Multi Tran
12:29              MAR 14 2012
Account Number          XXXXXX1808
Tran Amount             $70,000.00
Cash Amount                  $0.00
```



This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

# PNCBANK

```
                060
        FRANKLIN PARK (032)
          3151 ROUTE 27
      FRANKLIN PARK NJ 08823
          Cashbox 06 AM

* Deposit Multi Tran
12:28              MAR 14 2012
Account Number          XXXXXX2128
Tran Amount            $220,000.00
Cash Amount                  $0.00
```



This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

# PNCBANK

```
                060
        FRANKLIN PARK (032)
          3151 ROUTE 27
      FRANKLIN PARK NJ 08823
          Cashbox 06 AM

* Deposit Multi Tran
12:25              MAR 14 2012
Account Number          XXXXXX4293
Tran Amount             $30,000.00
Cash Amount                  $0.00
```



This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

```
                060
        FRANKLIN PARK (032)
          3151 ROUTE 27
      FRANKLIN PARK NJ 08823
          Cashbox 06 AM

* Deposit Multi Tran
12:30              MAR 14 2012
Account Number          XXXXXX4293
Tran Amount                $159.94
Cash Amount                  $0.00
```

# PNCBANK

This deposit or payment is accepted subject to
verification and to the rules and regulations of
this bank. Deposits may not be available for
immediate withdrawal. Receipt should be held
until verified with your statement.

```
                060
        FRANKLIN PARK (032)
          3151 ROUTE 27
      FRANKLIN PARK NJ 08823
          Cashbox 06 AM

* Deposit Multi Tran
12:26              MAR 14 2012
Account Number          XXXXXX2370
Tran Amount             $40,000.00
Cash Amount                  $0.00
```

# PNCBANK





CHECK TYPE: UL/IL

CHECK NO. [redacted]635

TRAN TYPE: DEATH CLAIM
POL TYPE :INSURANCE

AGENT: HARRIS C TANG
ID-DT: SSX [redacted]123
DC 2

ASU: MLO

POLICY NO. [redacted]265

INSURED'S NAME: ZHOU FANG

| | | |
|---|---|---|
| BASIC DEATH BENEFIT | 180,000.00 | |
| ACCRUED LOAN INTEREST FROM DEC 24,2011 IS | | 4.38 |
| LOAN BALANCE | | 412.66 |
| CHECK AMOUNT | | 179,582.96 |
| TOTALS | 180,000.00 | 180,000.00 |

CHECK DT: JAN 25,2012

| AMOUNT OF CHECK | ******$179,582.96 |
|---|---|

FINANCIAL PROFESSIONAL HARRIS C TANG @ MLO (908) 510-8079
CHECK TO BE MAILED VIA FED EX DELIVERY

DETACH THIS STATEMENT BEFORE DEPOSITING

DEATH CLAIM    REGISTER DATE    CHECK DATE
219                JUL 05,2004      JAN 25,2012

POLICY/UNIT INSURED

███889   ZHOU FANG

DC 2

AGENT NAME                        ASU

050179. H  TANG                   MLO

| TRANSACTION TYPE | DEATH CLAIM | SAN███123 | POLICY TYPE | INSURANCE |
|---|---|---|---|---|
| BASIC DEATH BENEFIT | | 180,000.00 | | |
| VOLUNTARY INTEREST | | 576.98 | | |
| CHECK AMOUNT | | | | 180,576.98 |
| | | **TOTALS:** | **$180,576.98** | **$180,576.98** |

FINANCIAL PROFESSIONAL: HARRIS C TANG @ MLO
PH: (732) 326-5256
INTEREST RATE PAID @ 3% FROM 12/24/2011 TO 02/01/2012
SEND CHECK TO FINANCIAL PROFESSIONAL VIA FEDEX FOR DELIVERY
FEDEX TRACKING NUMBER: 7931 5409 5076
2 OF 2 (SEND CHECK WITH POLICY: 156220265)

CHECK NO.
███360

CHECK TYPE:  ELAS-N                DETACH THIS STATEMENT BEFORE DEPOSITING

# Certificate of Deposit
## Account Verification
### PNC Bank National Association

⏵ PNC BANK

| | |
|---|---|
| Certificate Number ████2128 | Reference Number ████4595 |
| Purchase Date 03/14/2012 | Purchase Amount $220,000.00 |
| Maturity Date 03/14/2017 | Term 5 YEARS |
| Annual Percentage Yield 1.0000 | |
| Renewal Type AUTOMATIC | |
| Product Description FIXED RATE CD | |
| For Information, Call 1-877-BANK-PNC | |

ZHOU FANG LIVING TRT
ENKUANG DAVID CHENG OR E. FANG TTEES
URTAD 12/01/2011
28 GROENDYKE LN
PLAINSBORO NJ 08536

Interest Rate Effective Until

1.000            03/14/2017

Please review the Account Agreement on reverse side for important information about this account.

Member FDIC 

# Certificate of Deposit
## Account Verification
### PNC Bank National Association

PNC BANK

| | | | |
|---|---|---|---|
| **Certificate Number** ███808 | | **Reference Number** ███669 | |
| **Purchase Date** 03/14/2012 | | **Purchase Amount** $70,000.00 | |
| **Maturity Date** 03/14/2016 | | **Term** 4 YEARS | |
| **Annual Percentage Yield** 0.7500 | | | |
| **Renewal Type** AUTOMATIC | | | |
| **Product Description** FIXED RATE CD | | | |
| **For Information, Call** 1-877-BANK-PNC | | | |

ZHOU FANG LIVING TRT
ENKUANG DAVID CHENG OR E. FANG TTEES
URTAD 12/01/2011
28 GROENDYKE LN
PLAINSBORO NJ 08536

Interest Rate Effective Until

.749          03/14/2016

Please review the Account Agreement on reverse side for important information about this account.



Member
**FDIC**

# Certificate of Deposit
## Account Verification
**PNC Bank National Association**

**PNC BANK**

| Certificate Number | Reference Number |
|---|---|
| 2370 | 976 |
| **Purchase Date** <br> 03/14/2012 | **Purchase Amount** <br> $40,000.00 |
| **Maturity Date** <br> 03/14/2015 | **Term** <br> 3 YEARS |
| **Annual Percentage Yield** <br> 0.4000 | |
| **Renewal Type** <br> AUTOMATIC | |
| **Product Description** <br> FIXED RATE CD | |
| **For Information, Call** <br> 1-877-BANK-PNC | |

ZHOU FANG LIVING TRT
ENKUANG DAVID CHENG OR E. FANG TTEES
URTAD 12/01/2011
28 GROENDYKE LN
PLAINSBORO NJ 08536

Interest Rate Effective Until



.400          03/14/2015

· Please review the Account Agreement on reverse side for important information about this account.

Member
FDIC
